**Kendra FRY and Benjamin Thompson, Plaintiffs,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, Defendant.**

No. 96–C–0292–S.

United States District Court, W.D. Wisconsin.

Dec. 11, 2000.

SUPPLEMENTAL MEMORANDUM AND ORDER

SHABAZ, District Judge.

The parties conducted a trial to the Court on December 7–8, 2000 in the above

captioned matter. From the evidence submitted by the parties the Court makes the following findings.

### FINDINGS OF FACT

#### The Parties

Plaintiffs are students currently enrolled at the University of Wisconsin–Madison. Defendant has been sued in its official capacity as the governing body of the University of Wisconsin. Plaintiffs object to a policy of the defendant, the segregated university fee, because it is used to subsidize ideological and political expressive speech with which they disagree.

#### Program Structure

Students enrolled full-time at the University of Wisconsin–Madison must pay a mandatory fee each semester. This fee is called the segregated university fee (SUF). The segregated fee money collected from the students is deposited in state accounts.

Wisconsin law gives both the University's Board of Regents and the students control over the funds generated by the segregated fee. This is known as "shared governance." The Associated Students of Madison (ASM) exists as the student government entitled to represent University students on campus. The ASM Student Council is composed of 33 representatives elected from the University's student body. The ASM Finance Committee and the Student Services Finance Committee (SSFC) are sub-committees of the ASM that review internal ASM budgets and external university budgets that are funded by the segregated fee. The ASM Finance Committee is composed of nine members who are appointed by the ASM Student Council. The SSFC is composed of members elected from the student body and members appointed by the ASM and other bodies.

The Board of Regents has divided the segregated fee into two main categories— allocable fees and nonallocable fees. The allocable fee category includes the General Student Service Fund (GSSF) and the ASM budget. Only allocable fees are relevant to this action.

For the 2000–2001 academic year, full-time students at the University of Wisconsin–Madison are each charged a segregated student fee of $249 per semester. Of this amount, $53.12 represents the allocable portion. Of the allocable portion, $8.53 is allocated to the ASM both to support the operation of the UW–Madison student government and to provide funding for ASM grants to student groups requesting funding. Another $19.06 of the allocable portion is allocated to the GSSF.

The Board of Regents has determined that student responsibility for the direct disposition of student fees exists only for the allocable portion of the segregated fee. Under Wisconsin law students have primary responsibility for the formulation and review of policies concerning "student life, services and interests." At UW–Madison, the Chancellor has agreed that "student life, services and interests" include: (1) the registration and regulation of student organizations; (2) non-academic social, cultural and recreational programs for students; and (3) those services that are initiated and operated by students.

The ASM, in conjunction with the SSFC and ASM Finance Committee, in consultation with the Chancellor and subject to final confirmation by the Board of Regents, has responsibility for the disposition of allocable fee funding. All students are permitted to participate in the process of reviewing and approving allocations by attending and participating in ASM Finance Committee and SSFC meetings where allocation determinations are discussed. Students are also free to campaign for election or appointment to the ASM and SSFC.

#### Registered Student Organizations (RSOs)

To be considered for GSSF funding or for an ASM grant a student group must be a Registered Student Organization (RSO). To qualify as a Registered Student Organization, a student group must meet the

following criteria: (1) it must be a not-for-profit, formalized group; (2) it must be composed mainly of students; (3) it must be controlled and directed by students; (4) it must be related to student life on campus; (5) it must abide by all federal, state, city and University nondiscrimination laws and policies; (6) it must identify a student as a primary contact person for the organization and provide the Student Organization office with the information required on the registration form; (7) it must abide by the financial and other regulations specified in the Student Organization Handbook.

The RSOs can seek funding from the segregated fee in several ways: (1) GSSF funding through the SSFC; (2) grants through the ASM Finance Committee. The use of a third method to obtain funding, a student body referendum, has been discontinued by the University after the United States Supreme Court noted its inherent problems on appeal.

All hearings relating to GSSF funding and ASM grant funding are public. The committees' allocation process produces a documentary record, as in a legislative branch. In the case of ASM grants that record consists of the grant guidelines, the RSO's application, notation upon the application showing the finance committee's action, and perhaps the notes of a staff advisor attending the meeting. GSSF funding decision records consist of funding guidelines, the group's application, and a spreadsheet showing the funding decisions. Neither body records its rationale for funding decisions. Sometimes minutes and roll call votes are included in the records. The records do not contain a formal rationale for any decision to grant or deny funding, or to increase or decrease a requested funding amount.

### GSSF Funding

Student groups seeking funding from the GSSF apply to the SSFC. Applications for GSSF funding must be submitted in September preceding the academic year for which funding is requested. The SSFC holds hearings from October through December and announces its funding decisions by mid-December. Funding applications are decided by a majority vote of the committee. Members of RSOs and the student body are free to lobby and discuss funding applications with SSFC members.

If a student organization receives GSSF funds, it may not receive an ASM Operations Grant at the same time. However, it may receive an ASM Events Grant while receiving GSSF funds. Student organizations seeking funding through this method must apply for funding to begin the next fiscal year.

The SSFC uses ten guidelines, subject to change, in making GSSF funding determinations:

1. An applicant must be a registered student organization that provides an important, on-going service to significant numbers of UW–Madison students. These services should contribute significantly to student health, safety, well-being, participation, opportunity or education.

2. The service must be not-for-profit.

3. When serving both students and non-students, the SSFC will generally only consider funding portions of programs serving students.

4. The SSFC will generally consider funding only those portions of programs directed by students.

5. Services receiving fees are expected to abide by all SSFC, campus, state and federal wage policies.

6. GSSF funding is not intended to replace any reductions in funding previously exclusively funded through tuition or "GPR" moneys.

7. Capital expenditures are provided for equipment that will substantially enhance the service offered to students only when other funding avenues have been exhausted.

8. All expenditures and revenues by student groups must be documented and made available.

9. Where possible, there must be a record system for measuring the number of students served.

10. Services that receive more than 30% of their budget from student fees and have an advisory board shall have a SSFC-appointed liaison.

"Service" as used in these guidelines has never been defined and has been the subject of contentious debate among SSFC committee members. A group seeking to appeal an SSFC funding decision can appeal to the ASM Council or ASM Judiciary, and then may appeal to the UW–Chancellor.

### ASM Grants

Most RSOs seek funding through grants from the Student Government Activity Fund administered by the ASM Finance Committee. These funds come from the segregated fee. Student organizations receiving funding do not get cash or a lump sum payment from the ASM. The organizations must submit a requisition form for a specific expenditure. The RSOs can apply for Operations Grants, Event Grants, or Travel Grants.

*Operations Grants*—RSOs seeking an Operations Grant must apply in person to the ASM by March for funding in the next school year. Appeals from denials are made to the ASM Finance Committee or the ASM Council. A minimum of 8% of the total allocable funds budgeted for operations grants must be reserved for "last minute" operations grants that are awarded at the beginning of the following school year. Grant applications are decided by a majority vote of the ASM Finance Committee. Denials of such grants can be appealed to the ASM Council.

Guidelines state that operations grants cannot be awarded or used for (1) fund raisers, (2) food and beverages, (3) gifts, donations or contributions, (4) financial aid, (5) legal services, (6) expenses incurred prior to ASM approval, (7) wages, (8) non-university printing services, (9) event funding, (10) telephone charges, and (11) conference/travel costs.

*Event Grants*—Registered Student Organizations apply in person for funding for a specific event prior to the event. Event grants are subject to the same funding use restrictions as operation grants. Funded events must be in the Madison area and open to all students.

*Travel Grants*—Registered Student Organizations may apply for funding of travel that is central to the purpose of the organization.

### Board of Regents Involvement

After the ASM Finance, the SSFC, and the ASM have approved the disbursements of allocable money, their decisions are sent to the Chancellor and the Board of Regents for their review and approval. Under Wisconsin Statute § 36.09(5), the Board of Regents has final authority to approve or disapprove the allocations of funds by the student government. However, as a matter of practice, absent an RSO's appeal from a specific funding decision, the Board does not approve or disapprove individual decisions by the student officials. Instead, the Board votes on the approval of a budget which contains a line item or line items representing an aggregate amount of segregated fee expenditures.

In the last five years no student organization has appealed a funding decision to the student government, the Chancellor, or the Board of Regents. In considering any such appeals the Board is required to consider whether the student-proposed budget item requires the university to violate any statute, administrative code, policy or contract.

Since the United States Supreme Court's decision in *Board of Regents v. Southworth*, the University's president has amended the school's "Financial and Administrative Policies" to include that "[i]t

is the policy of the University of Wisconsin System to ensure that SUF is collected, allocated and expended in a manner consistent with the requirements of the United States Constitution, the Wisconsin Constitution and applicable state statutes, regulations and policy directives." Further, "[e]xpenditures of SUF must conform with constitutional requirements, including the decision of the United States Supreme Court in *Board of Regents v. Southworth* . . . ." The SSFC and ASM Finance Committee are expected to comply with these provisions.

*Additional Findings of Fact*

In addition to providing other campus services, some RSOs use segregated fee funding to engage in a wide range of ideological and political expression.

The ASM Finance Committee and the SSFC's objective guidelines for funding do not on their face condition the allocation of funds on the basis of a student group's viewpoint. While both committees' guidelines contain restrictions on funding politically partisan and religious activities the University's president amended the University's superceding "Financial and Administrative Policies" to eliminate these former prohibitions.

The required RSO status and the SSFC and ASM's objective guidelines are only threshold criteria that define what student groups and expenditures are eligible for funding support. Once a student group is deemed eligible for funding these guidelines provide no criteria for determining whether to fund the group and its proposed activity. They do not provide guidance on the funding amount. There are no objective criteria guiding the SSFC or ASM Finance Committee in determining whether to grant funds to an otherwise eligible student group. The decision to fund an eligible student group, and in what amount, is left entirely to the discretion of student government officials. Each voting member of the ASM Finance Committee and the SSFC choose and use his or her own criteria to judge otherwise eligible funding applications.

The same processes, guidelines and discretionary considerations are used in considering applications for both expressive speech and non-expressive activities. Most of the specific examples of funding applications presented in evidence involve student groups that do not engage in any discernible expressive activity. Where the SSFC's funding decisions involve student groups that do engage in political and ideological expressive activity, such as WISPIRG and the UW Greens, SSFC members often disagree over the propriety of funding them. Attempts have been made effectively to defund WISPIRG and the UW Greens. Students and student groups have lobbied SSFC members both for and against funding WISPIRG and the UW Greens.

## CONCLUSIONS OF LAW

The University, through its segregated fee program, promotes both expressive and non-expressive activities. Applications for expressive speech and non-expressive activities are subject to the same guidelines, prerequisites and discretion. The parties have presented several examples of the allocation process in action relating to non-expressive activities. However, the compelled funding of non-expressive activities does not raise a constitutional issue. It is only the compelled funding of expressive activities which is at issue in this case. Moreover, the Court is unconcerned with the political history of the University of Wisconsin student government. The only issue before the Court is the constitutionality of the current system for compelling and distributing student fees to fund the political and ideological activities on campus.

To require University of Wisconsin students to pay a fee to subsidize expressive speech without any protection for the rights of students who object to the funded speech is a violation of the First Amendment. *Board of Regents v. Southworth,*

529 U.S. 217, 120 S.Ct. 1346, 1354–55, 146 L.Ed.2d 193 (2000). That protection is achieved through the operation of the segregated fee program upon the principle of viewpoint neutrality. The Supreme Court has held that "when a university requires its students to pay a fee to support extracurricular speech, all in the interest of open discussion, it may not prefer some viewpoints to others." *Southworth*, 120 S.Ct. at 1356. Therefore, the University may not compel its students to pay fees to fund expressive speech if those fees are not distributed to speakers on a viewpoint neutral basis. The University's program must respect and safeguard the principle of viewpoint neutrality.

The segregated university fee program is a limited public forum. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829–31, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). The principle of viewpoint neutrality requires the University to refrain from distinguishing among student groups' viewpoints in permitting or denying forum access. Here the access is to a pool of money. Those allocating funds cannot "pick and chose among similarly situated speakers in order to advance or suppress a particular ideology or outlook." *Berner v. Delahanty*, 129 F.3d 20,28 (1st Cir.1997) (citing *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 393–94, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993)). Viewpoint neutrality requires that no viewpoint be preferred, and that no viewpoint is disadvantaged relative to other viewpoints. *Grossbaum v. Indianapolis–Marion Cty. Bldg. Auth.*, 100 F.3d 1287, 1298 (7th Cir.1996) "It is incumbent upon the State [ ] to ration or allocate scarce resources on some acceptable neutral principle." *Rosenberger*, 515 U.S. at 819, 115 S.Ct. 2510.

The use of "unbridled discretion" is not such a neutral principle. The Supreme Court has stated:

[A] law or policy permitting communication in a certain manner for some but not for others raises the specter of . . . viewpoint censorship. The danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official. . . . [B]ecause without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the . . . viewpoint of the speaker.

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 763–64, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The Tenth Circuit Court of Appeals has noted that allowing government officials to make decisions as to who may speak in a limited public forum and who may not, without any criteria or guidelines to circumscribe their power, strongly suggests the potential for unconstitutional conduct. *Summum v. Callaghan*, 130 F.3d 906, 920 (10th Cir.1997). In the absence of express objective standards the use of "post hoc rationalizations" and "shifting or illegitimate criteria" by decision-makers hinders the detection of viewpoint discrimination. *Id.* at 920 (citing *City of Lakewood*, 486 U.S. at 758, 108 S.Ct. 2138). These concerns have been recognized in the context of access to a limited public forum. *See id.* Some degree of discretion may be both necessary and constitutionally permissible in the segregated fee program, but discretion not limited by express objective standards is insufficient to adequately safeguard the principle of viewpoint neutrality in funding expressive activities.

■ This Court has found that no objective standards exist to determine which eligible student groups receive the funds compelled from the student body. The University has delegated its power to the student government. Decisions as to who receives funding and in what amounts are left to the complete discretion of the student officials on student government committees. While appeals processes exist for funding denials, those hearing the appeals are no more bound by objective standards than the original decision-makers. Any body hearing an appeal, however, has no

record of the SSFC or ASM Finance Committee's rationale for its decision. General and vague prohibitions in University policy provide no meaningful constraint on the student government. No meaningful oversight of the allocations decisions exists.

The absence of objective guidelines and criteria creates a second problem. The present system for allocating fees cannot be distinguished from the student referendum. Both the referendum and the student government operate on the principle of majoritarian rule. As the Supreme Court stated in *Southworth*, and re-iterated in *Santa Fe Independent School District v. Doe*, "access to a public forum cannot depend upon majoritarian consent". *Southworth*, 120 S.Ct. at 1357; *Santa Fe Independent Sch. Dist. v. Doe*, 530 U.S. 290, 120 S.Ct. 2266, 2276, 147 L.Ed.2d 295 (2000). Instead of a decision by 40,000 students the present system places a vote in the hands of committee members who represent those 40,000 students. Direct democratic referenda and representative legislatures both produce majority determinations that necessarily sacrifice viewpoint neutrality. Such determinations are not sufficient to safeguard diverse student speech. *Santa Fe*, 120 S.Ct. at 2276.

While the Court recognizes the University's interest in administering an effective program to promote student speech, the absence of express objective standards vests unfettered and unbridled discretion in the program decision-makers in a manner inconsistent with viewpoint neutrality. A viewpoint neutral system for distributing compelled fees cannot mean a system that completely delegates funding decisions to the student government without objective criteria or effective oversight. Because the program fails to protect the rights of objecting students by curtailing the unregulated discretion possessed by the student government the program fails to adhere to and safeguard viewpoint neutrality and therefore compelling fees from students to subsidize expressive activities violates the First Amendment.

In summation the Court determines that the University of Wisconsin's current system for compelling, allocating and distributing segregated university fees to fund expressive activities does not operate in a viewpoint neutral manner and accordingly constitutes impermissible compelled speech in violation of the First Amendment of the United States Constitution, accordingly,

### ORDER

IT IS ORDERED that defendant Board of Regents of the University of Wisconsin System is enjoined from Compelling, allocating and distributing segregated university fees to fund expressive activities unless and until defendant establishes an allocation system operates in a viewpoint neutral manner.

IT IS FURTHER ORDERED that judgment as aforesaid shall be in favor of plaintiffs against defendant for that injunctive relief set forth herein together with costs to be entered February 14, 2001, allowing defendant to establish a system which operates in a viewpoint neutral manner.